JOHN M. SKINNER *v.* COLIN ANGLIKER, DIRECTOR OF WHITING FORENSIC INSTITUTE, ET AL.
(13504)

PETERS, C. J., SHEA, CALLAHAN, GLASS and COVELLO, Js.

Argued March 7—decision released May 30, 1989

*Igor I. Sikorsky, Jr.,* with whom, on the brief, was *Robert Skelton,* for the appellant (plaintiff).

*William J. McCullough,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* acting attorney general, *Joseph I. Lieberman,* former attorney general, and *Charles A. Overend,* assistant attorney general, for the appellees (defendants).

*Elizabeth F. Gallagher* and *William F. Gallagher* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

CALLAHAN, J. Certification was granted in this case limited to the question: "Did the Appellate Court err in deciding that a discharged employee who initiated an action under Connecticut General Statutes Section 31-51q was not entitled to a trial by jury?" *Skinner* v. *Angliker,* 209 Conn. 807, 548 A.2d 438 (1989). We affirm the judgment of the Appellate Court.

The facts relevant to this appeal have been set forth in the opinion of the Appellate Court; *Skinner* v. *Angliker,* 15 Conn. App. 297, 544 A.2d 246 (1988); but can be briefly summarized as follows. Shortly after being employed by the department of mental health as a forensic treatment specialist in 1983, the plaintiff allegedly witnessed numerous incidents of verbal and physical abuse of patients by some of the staff members at Whiting Forensic Institute. On October 21, 1983, the plaintiff was discharged after making several complaints regarding that abuse to his supervisors and officials at Whiting. The plaintiff secured employment at another institution soon thereafter.

In January, 1984, the plaintiff[1] filed a complaint in the Superior Court against the defendants, Colin Angliker, the director of the Whiting Forensic Institute, and Audrey M. Worrell, the commissioner of the state department of mental health, in their official capacities, alleging that they had discharged him because he had exercised his first amendment rights and that the defendants' actions were in violation of General Statutes § 31-51q.[2] The plaintiff claimed the

[1] On appeal to this court, the Connecticut Trial Lawyers Association filed a brief as amicus curiae.

[2] "[General Statutes] Sec. 31-51q. LIABILITY OF EMPLOYER FOR DISCIPLINE OR DISCHARGE OF EMPLOYEE ON ACCOUNT OF EMPLOYEE'S EXERCISE OF CERTAIN CONSTITUTIONAL RIGHTS. Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer."

case for the jury docket, and the defendants subsequently filed a motion to strike, pursuant to Practice Book § 282,[3] arguing that there was no right to a jury trial under § 31-51q. The trial court denied the defendants' motion and a jury trial commenced on July 22, 1986.[4] The jury returned a verdict for the plaintiff awarding him $9000 for present and future loss of earnings, $1 for emotional distress and $26,752.50 for punitive damages. The plaintiff was also awarded $3000 by the trial court for attorney's fees and costs.

On September 30, 1986, the defendants appealed the judgment to the Appellate Court, arguing, in relevant part, that the trial court erred in denying their motion to strike the case from the jury docket. Specifically, the defendants maintained that the plaintiff did not have a right to a jury trial in an action brought against the state pursuant to § 31-51q.[5]

Addressing the defendants' claim of error, the Appellate Court correctly set forth the standards used to determine whether a party is entitled to a trial by jury. "The constitution of Connecticut, article first, § 19, states that '[t]he right of trial by jury shall remain inviolate.' This particular provision of our constitution has

---

[3] "[Practice Book] Sec. 282. STRIKING FROM LIST; ADDING CASES

"If in the opinion of the court a case or matter is improperly upon a trial or assignment list, it will be stricken from the list, or otherwise disposed of, at the discretion of the court. Cases may at any time, by order of the court, be placed upon either list."

[4] Prior to the commencement of the case, the defendants filed a motion to dismiss, arguing that General Statutes § 31-51q does not constitute a waiver of sovereign immunity. The trial court denied the defendants' motion. The Appellate Court upheld the trial court's denial of the defendants' motion. *Skinner* v. *Angliker*, 15 Conn. App. 297, 300–302, 544 A.2d 246 (1988). We agree with the Appellate Court that the state waived its immunity in § 31-51q and, therefore, do not reexamine the issue in this appeal.

[5] The defendants also maintained that the trial court's jury instructions were erroneous. Finding that the jury verdict should be set aside, the Appellate Court found it unnecessary to address these claims of error.

been consistently construed by Connecticut courts to mean that if there was a right to a trial by jury at the time of the adoption of the provision, then that right remains intact. See, e.g., *Swanson* v. *Boschen,* 143 Conn. 159, 165, 120 A.2d 546 (1959) . . . *State* v. *Mention,* 12 Conn. App. 258, 263, 530 A.2d 645 (1987); *State* v. *Weisser,* 9 Conn. App. 255, 257, 518 A.2d 655 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1207 (1987)." *Skinner* v. *Angliker,* supra, 15 Conn. App. 302; see also *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,* 135 Conn. 294, 297, 64 A.2d 39 (1949). It is generally held that the right to a jury trial "exists not only in cases in which it existed at common law and at the time of the adoption of constitutional provisions preserving it, but also exists in cases substantially similiar thereto. . . . " 47 Am. Jur. 2d, Jury § 17; *Swanson* v. *Boschen,* supra. At common law, "legal claims [were] tried by a jury, [and] equitable claims [were] tried by a court . . . . " *Miles* v. *Strong,* 68 Conn. 273, 286, 36 A. 55 (1896); *Dawson* v. *Orange,* 78 Conn. 96, 100, 61 A. 101 (1905). Equitable actions, therefore, are not within the constitutional guarantee of trial by jury. *Franchi* v. *Farmholme, Inc.,* 191 Conn. 201, 210, 464 A.2d 35 (1983); *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,* supra.

Moreover, General Statutes § 52-215,[6] provides that as a matter of right "civil actions involving such an

---

[6] "[General Statutes] Sec. 52-215. DOCKETS. JURY CASES. COURT CASES. In the superior court a docket shall be kept of all cases. In such docket immediately following the names of the parties and their attorneys in all jury cases shall be entered the word 'jury.' The following-named classes of cases shall be entered in the docket as jury cases upon the written request of either party made to the clerk within thirty days after the return day: Appeals from probate involving the validity of a will or paper purporting to be such, appeals from the actions of commissioners on insolvent estates, and, except as hereinafter provided, civil actions involving such an issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity, except that there shall be no right to trial by jury in civil actions in which the amount, legal interest or property in demand does

issue of fact as, prior to January 1, 1880, would not present a question properly cognizable in equity" should be entered on the docket as jury cases upon proper request. Section 52-215 goes on to state that certain enumerated actions and "all other special statutory proceedings, which, prior to January 1, 1880, were not triable by jury," shall be tried to the court without a jury. The right that the plaintiff seeks to enforce is statutory and was legislatively created in 1983. In *Swanson* v. *Boschen,* supra, 164–65, we stated, however, that the term " 'special statutory proceedings' cannot be construed, under the constitutional provisions guaranteeing jury trials, to mean any cause of action whatsoever, simply because it is authorized by an enactment of the legislature. If it could, the legislature, by the process of giving legislative sanction to common-law causes of action, could, in the course of time, obviate the guarantee of jury trial completely. . . . The test is whether the issue raised in the action is substantially of the same nature or is such an issue as prior to 1818 would have been triable to a jury." See also *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,* supra, 297.

Accordingly, in determining whether a party has a right to a trial by jury under the state constitution and

not exceed two hundred fifty dollars or in a summary process case. When, in any of the above-named cases an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party made to the clerk; and any such case may at any time be entered in the docket as a jury case by the clerk, upon written consent of all parties or by order of court. All issues of fact in any such case shall be tried by the jury, provided the issues agreed by the parties to be tried by the court may be so tried. All cases not entered in the docket as jury cases under the foregoing provisions, including actions in which an account is demanded and judgment rendered that the defendant shall account, writs of habeas corpus and ne exeat, complaints for dissolution of marriage and all other special statutory proceedings which, prior to January 1, 1880, were not triable by jury, shall be entered on the docket as court cases, and shall, with all issues of law and issues of fact, other than those hereinbefore specified, which may be joined in actions entered on the docket as jury cases, be disposed of as court cases."

§ 52-215, the court must ascertain whether the action being tried is similar in nature to an action that could have been tried to a jury in 1818 when the state constitution was adopted. This test requires an inquiry as to whether the course of action has roots in the common law, and if so, whether the remedy involved was one in law or equity. If the action existed at common law and involved a legal remedy, the right to a jury trial exists and the legislature may not curtail that right either directly or indirectly. *Franchi* v. *Farmholme, Inc.,* supra; *Swanson* v. *Boschen,* supra; *United States Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,* supra; *Windham Community Memorial Hospital* v. *Windham,* 32 Conn. Sup. 271, 273, 350 A.2d 785 (1975).

Applying this test, the Appellate Court, stated that "it is clear that [the plaintiff's] cause of action, if it existed at all prior to 1818, would have been barred under the doctrine of sovereign immunity," and, therefore, concluded that the trial court erred in denying the defendants' motion to strike the case from the jury docket. *Skinner* v. *Angliker,* supra, 15 Conn. App. 304. We agree.[7]

In discussing the doctrine of sovereign immunity, this court has stated that " 'because the state can act only

[7] In denying the plaintiff a right to a jury trial, the Appellate Court also relied on its finding that General Statutes § 31-51q actions are strictly statutory, stating that "it is only recently that there has been 'a growing judicial receptivity to the recognition of a tort claim for wrongful discharge'; *Sheets* v. *Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 480, 427 A.2d 385 (1980)." *Skinner* v. *Angliker,* 15 Conn. App. 297, 304, 544 A.2d 246 (1988). Given the extensive historical discussion on wrongful discharge in *Magnan* v. *Anaconda Industries, Inc.,* 193 Conn. 558, 479 A.2d 781 (1984), we question the Appellate Court's holding on this ground. Nonetheless, for the reasons stated herein, we agree with the Appellate Court that there is no right to a jury trial in suits brought against the state pursuant to § 31-51q. Whether the right to a jury trial exists under § 31-51q in cases against a private employer is not before us and, therefore, will not be addressed in this opinion.

through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state.' *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981). In its pristine form the doctrine of sovereign immunity would exempt the state from suit entirely, because the sovereign could not be sued in its own courts and 'there can be no legal right as against the authority that makes the law on which the right depends.' *Kawananakoa* v. *Polyblank,* 205 U.S. 349, 353, 27 S. Ct. 526, 51 L. Ed. 834 (1907); *Bergner* v. *State,* 144 Conn. 282, 284–85, 130 A.2d 293 (1957)." *Doe* v. *Heintz,* 204 Conn. 17, 31, 526 A.2d 1318 (1987); *Fetterman* v. *University of Connecticut,* 192 Conn. 539, 550–51, 473 A.2d 1176 (1984). Although the "absolute bar of actions against the state has been greatly modified both by statutes effectively consenting to suit in some instances as well as by judicial decisions in others"; *Doe* v. *Heintz,* supra, 31; it was not until the enactment of § 31-51q in 1983 that this bar was removed in suits against the state for wrongful discharge due to an employee's exercise of his or her first amendment rights. No principle of common law, prior to 1818, *allowed actions against the state* for wrongful discharge or related claims. Such actions, with or without a jury, simply did not exist against the state in 1818. In fact, the plaintiff conceded at oral argument that his claim would have been barred by sovereign immunity before 1818.

We are not implying that the right to a jury trial does not exist in any cause of action that was not specifically recognized at common law in 1818. "The historical test we apply is flexible and may require a jury in a new cause of action, not in existence in [1818], if it involves rights and remedies of the sort traditionally enforced in an action at law or if its nearest historical analogue is an action at common law." *Goar* v. *Com-*

*pania Peruana de Vapores,* 688 F.2d 417, 427 (5th Cir. 1982); *Swanson* v. *Boschen,* supra. But this flexible approach does not mandate a jury in this case. "The cases that have required jury trials for new causes of action have involved legislative enhancement or creation of rights and duties in circumstances where the common law enforced similiar rights and duties. See *Pernell* [v. *Southall Realty,* 416 U.S. 363, 370–76, 94 S. Ct. 1723, 40 L. Ed. 2d 198 (1974)]; *Curtis* [v. *Loether,* 415 U.S. 189, 195, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974)]. They did not involve removal or modification of blanket immunity, which creates enforceable rights and duties in circumstances where none existed before." *Goar* v. *Compania Peruana de Vapores,* supra. Accordingly, to entitle one to a right to a jury trial, "it is not enough that the nature of the plaintiff's action is 'legal' rather than equitable; the action must also be brought against a defendant who was suable at common law in [1818]." *Williams* v. *Shipping Corporation of India,* 653 F.2d 875, 883 (4th Cir. 1981), cert. denied, 455 U.S. 982, 102 S. Ct. 1490, 71 L. Ed. 2d 691 (1982); cf. *Municipal Authority of City of McKeesport* v. *Elizabeth Township,* 57 Pa. Commw. 13, 426 A.2d 182, aff'd, 498 Pa. 476, 447 A.2d 245 (1981) (no right to jury trial in suit against a municipal authority because the municipal authority did not exist when constitution adopted). Because the state was immune from suit in 1818 for this type of action, the plaintiff now has no right to a jury trial brought against the state under § 31-51q.

Our analysis draws support from cases involving claims for a jury trial under the seventh amendment[8] to the federal constitution in suits brought against the United States. Applying a historical test similar to the

---

[8] The seventh amendment to the United States constitution states in relevant part: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . . "

one set forth above,[9] the United States Supreme Court has held that the seventh amendment does not apply to suits against the government, because these "are not suits at common law within its true meaning." *McElrath* v. *United States,* 102 U.S. 426, 429, 26 L. Ed. 189 (1880); *Lehman* v. *Nakshian,* 453 U.S. 156, 162 n.9, 101 S. Ct. 2698, 69 L. Ed. 2d 548 (1981) ("[t]he reason that the Seventh Amendment presumption in favor of jury trials does not apply in actions at law against the United States is that the United States is immune from suit, and the Seventh Amendment right to a jury trial, therefore, never existed with respect to a suit against the United States"); *Glidden Co.* v. *Zdanok,* 370 U.S. 530, 572, 82 S. Ct. 1459, 8 L. Ed. 2d 671 (1962) (suits against government requiring as they do waiver of immunity are not suits at common law within the meaning of the seventh amendment); *Galloway* v. *United States,* 319 U.S. 372, 388, 63 S. Ct. 1077, 87 L. Ed. 1458 (1943).[10]

---

[9] In determining whether there is a right to jury trial under the seventh amendment, the United States Supreme Court applies a historical test in which it looks to see whether a similar cause of action was triable to a jury when the constitution was adopted in 1791. *Pernell* v. *Southall Realty,* 416 U.S. 363, 94 S. Ct. 1723, 40 L. Ed. 2d 198 (1974); *Curtis* v. *Loether,* 415 U.S. 189, 94 S. Ct. 1005, 39 L. Ed. 2d 260 (1974); *National Labor Relations Board* v. *Jones & Laughlin Steel Corporation,* 301 U.S. 1, 48, 57 S. Ct. 615, 81 L. Ed. 893 (1937). Although the seventh amendment constitutional guarantee of a right to a jury trial applies only in the federal courts; *Gluck* v. *Gluck,* 181 Conn. 225, 227, 435 A.2d 35 (1980); the similarity between the state and federal tests was recognized by this court in *Swanson* v. *Boschen,* 143 Conn. 159, 162-63, 120 A.2d 546 (1956).

[10] Similarly, the prohibition of jury trials in suits against foreign states in the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1602 through 1611, has been found not to violate the federal constitution's seventh amendment guaranty of a right to a jury trial since the amendment does not purport to require jury trials where none was required at common law and foreign sovereigns were immune from suit at common law. *Arango* v. *Guzman Travel Advisors,* 761 F.2d 1527 (11th Cir.), cert. denied, 474 U.S. 495, 106 S. Ct. 408, 88 L. Ed. 2d 359 (1985); *Goar* v. *Compania Peruana de Vapores,* 688 F.2d 417 (5th Cir. 1982); *Rex* v. *CIA. Peruana de Vapores, S.A.,* 660 F.2d 61 (3d Cir. 1981), cert. denied, 456 U.S. 926, 102 S. Ct. 1971,

Since it cannot be maintained that under the common law in 1818 a jury trial was a matter of right for persons asserting a claim against the sovereign, the right to a jury trial in this case will exist only if the legislature, in § 31-51q, has made the right applicable. Id., 388–89. Section 31-51q does not explicitly state that persons bringing actions under it are entitled to a trial by jury. The plaintiff argues, however, that in light of the language of § 31-51q and its legislative history, it is clear that the legislature intended to provide a legal, and not equitable, remedy and, therefore, it implicitly consented to a trial by jury. In addition, the plaintiff claims that because the legislature has specifically denied the right to a trial by jury in other statutes and it failed to do so in § 31-51q, we should assume that it intended to consent to a jury trial in § 31-51q actions. While the plaintiff's arguments may be valid in a suit against a private employer, it is important to remember that the instant action is one against the sovereign. Discussing the right to a jury trial in actions against the government under the seventh amendment to the federal constitution, the United States Supreme Court has stated that "the plaintiff has a right to a trial by jury only where that right is one of 'the terms of [the Government's] consent to be sued.' [*United States* v. *Testan*, 424 U.S. 392, 399, 96 S. Ct. 948, 47 L. Ed. 2d 114 (1976)]. Like a waiver of immunity itself, which must be 'unequivocally expressed,' *United States* v. *Mitchell*, [445 U.S. 535, 538, 100 S. Ct. 1349, 63 L. Ed. 2d 607, reh. denied, 446 U.S. 992, 100 S. Ct. 2979, 64 L. Ed. 2d 849 (1980)], quoting *United States* v. *King*, 395 U.S. 1, 4, [89 S. Ct. 1501, 23 L. Ed. 2d 52 (1969)], 'this Court has long decided that limitations and conditions upon which the Government consents to be sued

72 L. Ed. 2d 441 (1982); *Williams* v. *Shipping Corporation of India*, 653 F.2d 875 (4th Cir. 1981), cert. denied, 455 U.S. 982, 102 S. Ct. 1490, 71 L. Ed. 2d 691 (1982); *Ruggiero* v. *Compania Peruana de Vapores Inca Capac Yupanqui*, 639 F.2d 872 (8th Cir. 1981).

must be strictly observed and exceptions thereto are not to be implied.' *Soriano* v. *United States,* 352 U.S. 270, 276 [77 S. Ct. 269, 1 L. Ed. 2d 306 (1957)]. See also *United States* v. *Kubrick,* 444 U.S. 111, 117–18 [100 S. Ct. 352, 62 L. Ed. 2d 259 (1979)]; *United States* v. *Sherwood,* [312 U.S. 584, 590–91, 61 S. Ct. 767, 85 L. Ed. 1058 (1941)]." *Lehman* v. *Nakshian,* supra, 160–61; see also *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 188, 501 A.2d 745 (1985); *McKinley* v. *Musshorn,* 185 Conn. 616, 621, 441 A.2d 600 (1981) (statutes waiving government immunity must be strictly construed). When the state, by statute, waives its immunity to suit, as it has in § 31-51q, the right to a jury trial cannot be implied, but rather, must be affirmatively expressed. *Lehman* v. *Nakshian,* supra; see *Grandison* v. *United States Postal Service,* 696 F. Sup. 891, 893 (S.D.N.Y. 1988); *Baer* v. *Abel,* 648 F. Sup. 69, 77 (W.D. Wash. 1986); *Griffin* v. *United States Postal Service,* 635 F. Sup. 190, 192 (N.D. Ga. 1986) (no right to a jury trial unless affirmatively granted).[11] Neither § 31-51q nor any other statute in Connecticut contains a specific provision for jury trials for wrongful discharge.[12]

---

[11] In *Lehman* v. *Nakshian,* 453 U.S. 156, 161 n.8, 101 S. Ct. 2698, 69 L. Ed. 2d 548 (1981), the United States Supreme Court stated that "[i]t is not difficult to appreciate Congress' reluctance to provide for jury trials against the United States. . . . [J]uries 'might tend to be overly generous because of the virtually unlimited ability of the government to pay the verdict.' "

[12] The legislature has specifically granted or denied the right to a jury trial in other statutes in which it has waived sovereign immunity. For example, General Statutes § 4-61 (a), entitled "Actions against the state on highway and public works contracts," denies the right to a jury trial stating that "[s]uch action shall be tried to the court without a jury." General Statutes § 13a-144, which allows damages for injuries sustained on state highways and sidewalks, specifically states that "[s]uch action shall be tried to the court or jury." Although General Statutes § 13a-149, which provides "[d]amages for injuries by means of defective roads and bridges," does not specifically grant or deny the right to a trial by jury, the right is apparently preserved since governmental immunity in such actions was waived

Accordingly, because no cause of action in these circumstances existed against the state in 1818, let alone the right to a jury trial, and the legislature has not specifically provided for a jury in § 31-51q actions, the Appellate Court was correct in concluding that the plaintiff was not entitled to a trial by jury in this case.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

by statute in 1672 and said actions were tried to a jury prior to 1818 as evidenced in the case *Eldredge* v. *Pomfret,* 1 Root 270 (1791).